Peggy A. Tomsic (3879)
 tomsic@mcgiplaw.com
Kennedy D. Nate (14266)
 nate@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff, Nutraceutical
    Corporation

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **NUTRACEUTICAL CORPORATION, a Delaware corporation, and NUTRAMARKS, INC., a Delaware corporation,**<br><br>    **Plaintiffs,**<br>**v.**<br><br>**COBRA LABS LIMITED, a New Zealand company,**<br><br>    **Defendant.** | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br><br><br><br>**Case No.:**<br><br>**Honorable** |

Plaintiffs Nutraceutical Corporation and NutraMarks, Inc. (collectively "Plaintiffs" or "Nutraceutical") through counsel MAGLEBY CATAXINOS & GREENWOOD, allege and complain against Cobra Labs Limited ("Defendant" or "Cobra") as follows:

### NATURE OF THE ACTION

1.      In this action, Plaintiffs seek injunctive and monetary relief for trademark infringement, unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et*

*seq.,* and violation of the Utah Unfair Competition and Practices Acts, Utah Code Ann. §
13-5-101 *et seq.*

## PARTIES

2.      Plaintiff Nutraceutical Corporation is a Delaware corporation with its
principal place of business at 1400 Kearns Boulevard, Park City, Utah 84060.

3.      Plaintiff NutraMarks, Inc. is a Delaware corporation having its principal
place of business at 1500 Kearns Boulevard, Park City, Utah, 84060.  NutraMarks is a
wholly-owned subsidiary of Nutraceutical Corporation and owns the trademark rights
and assets used by Nutraceutical Corporation.

4.      Defendant Cobra Labs Limited is a New Zealand company with its
principal place of business at Uni 3 / 9 Oropuriri Road, Waiwhakaiho, New Plymouth
New Zealand.

## JURISDICTION AND VENUE

5.      This action arises under the Federal Trademark Act, 15 U.S.C. § 1051 *et
seq.*, the Federal Lanham Act, 15 U.S.C. § 1125(a), and the Utah Unfair Competition
and Practices Acts, Utah Code Ann. § 13-5-101 *et seq.*

6.      This Court has subject matter jurisdiction over this action pursuant to 15
U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c)
because Defendant's contacts with Utah are sufficient to create personal jurisdiction
over Defendant in Utah and because a substantial part of the events giving rise to the
claims in this action occurred within this District.

8.      This Court has personal jurisdiction over the Defendant because it has continuous and systematic general business contacts with Utah.

9.      Personal jurisdiction exists over Defendant for at least the following reasons:  Defendant has an interactive website that allows customers from any jurisdiction, including Utah, to order products; Defendant has systematically advertised its products in Utah through, among others, its interactive website and the use of other internet based platforms, such as social media; Defendant is infringing on a trademark owned by Plaintiffs that Defendant knew would harm Plaintiffs in this District; and Defendant has continued to use its infringing mark even after receiving notice that it was infringing on a Plaintiffs' trademark, thus, the brunt of harm suffered by Plaintiffs based on Defendant's continued and unlawful use of an infringing trademark has been suffered by Plaintiffs in this District.

### FACTUAL ALLEGATIONS

10.     Nutraceutical (directly and through its subsidiaries) manufactures, distributes, and sells a wide variety of nutritional and dietary supplements, cosmetic products, personal care products, and therapeutic topical products in health and natural food stores and similar outlets nationwide.

<u>Registration and Use of the COBRA Trademark</u>

11.     Since at least as early as July 1990, Nutraceutical and its predecessor-in-interest Natural Balance, Inc. ("Natural Balance"), have used the COBRA trademark throughout the United States in connection with the advertising, promotion, and sale of dietary supplements.

3

12.     Nutraceutical's and Natural Balance's use of the COBRA mark resulted in the acquisition of nationwide common law rights in the COBRA trademark.

13.     In or around January 2000, Plaintiffs' predecessor, Natural Balance, filed for registration of the COBRA trademark with the United States Patent and Trademark Office ("USPTO").

14.     The COBRA trademark was duly registered on April 25, 2000, and assigned Registration Number 2,344,508.  Registration Number 2,344,508 and the common law rights acquired by Nutraceutical and its predecessor-in-interest Natural Balance are collectively referred to herein as the "COBRA Mark".  A true and correct copy of the Registration Certificate of the Mark is attached hereto as Exhibit "1" and is hereby incorporated by this reference.

15.     Registration Number 2,344,508 is valid and subsisting and therefore constitutes *prima facie* evidence of the validity of the mark set forth in the registration and of Nutraceutical's exclusive right to use the mark in connection with the goods set forth in the registration.

16.     The registration also constitutes constructive notice to all other parties of Plaintiffs' ownership of the COBRA Mark pursuant to 15 U.S.C. § 1072.

17.     Since at least as early as 1990, Nutraceutical, either directly or through its subsidiaries or predecessor-in-interest, has invested significantly to develop, promote, and maintain the COBRA Mark throughout the United States.

18.     As a result of substantial sales and extensive advertising and promotion, the COBRA Mark has become widely and favorably known as identifying Nutraceutical's

dietary and nutritional supplements, and has become an intellectual property asset of considerable value.

<u>Use and Ownership of the COBRA Design Trademark</u>

19.     In connection with the COBRA Mark, Nutraceutical has also used the COBRA design trademark ("COBRA Design Mark") dating back to 1990.

20.     The COBRA Design Mark contains a drawing of a cobra snake with its hood inflated, the lower part of the snake being coiled, and its tail slightly erect. Examples of how the COBRA Design Mark has been used in connection with the COBRA Mark are included below:

 

21.     Nutraceutical has continuously used the COBRA Design Mark in connection with the COBRA Mark for more than eleven years.

22.     Since at least as early as 1990, Nutraceutical, either directly or through its subsidiaries or predecessor-in-interest, has invested significantly to develop, promote, and maintain the COBRA Design Mark throughout the United States.

23.     As a result of substantial sales and extensive advertising and promotion, the COBRA Design Mark has become widely and favorably known as identifying Nutraceutical's dietary and nutritional supplements, and has become an intellectual property asset of considerable value.

Assignment of the COBRA Mark and COBRA Design Mark to Nutraceutical

24.     On May 14, 2004, Natural Balance, Inc. assigned its entire interest in the COBRA Mark and the COBRA Design Mark (collectively, the "COBRA Marks") to Nutraceutical.  A true and correct copy of the Trademark Assignment is attached hereto as Exhibit "2" and incorporated by this reference.

25.     Since the assignment, Nutraceutical has continued to use the COBRA Marks in connection with the sale of nutritional and dietary supplements.

26.     Among other things, Nutraceutical has used the COBRA Marks to sell nutritional and dietary supplements through various channels, including without limitation in brick-and-mortar stores and online through such websites as www.iherb.com and www.vitacost.com.

27.     Nutraceutical sells nutritional and dietary supplements that fall within the Class 5 classification of goods according to the International Classification of Goods and Services for the Purposes of the Registration of Marks.

<u>Defendant's Willful Infringement of Nutraceutical's COBRA Marks</u>

28.     Upon information and belief, Defendant first began using an infringing Cobra mark in or around March 2011.

29.     On January 5, 2012, Defendant filed an application with the USPTO with serial number 85,509,253 (the "First Application") seeking to register "COBRA LABS" as a trademark.  A true and correct copy of the First Application is attached hereto as Exhibit "3" and is hereby incorporated by this reference.

30.     The First Application listed Defendant's date of first use of the infringing "COBRA LABS" mark as March 1, 2011.  [*See id.*].

31.     On April 16, 2012, the USPTO sent Defendant an Office Action.  A true and correct copy of the Office Action is attached hereto as Exhibit "4" and is hereby incorporated by this reference.

32.     The Office Action informed Defendant that its application for registration of "COBRA LABS" was denied because it "so resemble[d] [the COBRA Mark] that it [was] likely that a potential consumer would be confused or mistaken or deceived as to the source of the goods and/or services of the applicant and registrant."  [*See id.*].

33.     The Office Action further explained its rejection of Defendant's application, noting that Defendant's "goods/services are highly related" to the goods and services offered by Nutraceutical "because both identify dietary supplements and [Defendant's] health related goods are highly related. . . .  Thus, [Defendant's] mark is likely to cause confusion as to the source of the goods/services."  [*See id.*].

34.     Defendant did not respond to the Office Action.

35.     On November 13, 2012, the USPTO provided Defendant with a Notice of Abandonment, declaring that Defendant's First Application had been abandoned.  A true and correct copy of the Notice of Abandonment is attached hereto as Exhibit "5" and is hereby incorporated by this reference.

36.     Despite abandoning its First Application, Defendant continued and continues to sell products bearing an infringing mark.

37.     Upon information and belief, Defendant has ceased using the term "LABS" in connection with its products and now markets and sells products bearing the infringing mark "COBRA":



*See* COBRA LABS, http://cobralabs.com/ (last visited May 1, 2017).

38.     Defendant has willfully placed the infringing "COBRA" mark on its products even though Defendant is fully aware that it does not have any ownership in or right to use the COBRA Marks.

39.     Upon information and belief, Defendant's intentional use of the infringing "COBRA" mark is done with the intent to mislead the public into believing that Defendant's products are in some way sponsored by, affiliated with or connected to Nutraceutical's products, which are advertised and sold under the COBRA Marks.

### Defendant's Continued Willful Infringement of Nutraceutical's COBRA Marks

40.     On July 20, 2016, Defendant filed an Intent to Use ("ITU") application with the USPTO, with serial number 87,110,876 (the "Second Application") stating its intent to use a design mark in connection with its products.  A true and correct copy of the Second Application is attached hereto as Exhibit "6" and is hereby incorporated by this reference.

41.     The design mark Defendant proposes to use is virtually identical to the COBRA Design Mark.  Defendant's infringing mark contains a drawing of a cobra snake with its hood inflated, the lower part of the snake being coiled, and its tail slightly erect:



42.     On November 1, 2016, the USPTO sent Defendant an Office Action.  A true and correct copy of the Office Action is attached hereto as Exhibit "7" and is hereby incorporated by this reference.

43.     The Office Action informed Defendant that its application for registration of "COBRA LABS" was denied because it "so resemble[d] [the COBRA Mark] that it [was] likely that a potential consumer would be confused, mistaken, or deceived as to the source of the goods of the applicant and registrant."  [*See id.*].

44.     The Office Action further explained its rejection of Defendant's application, noting that "[u]nder the doctrine of legal equivalents, a design mark may be found confusingly similar to a word mark consisting of the design's literal equivalent because they create a similar mental impression. . . .  As such, registration must be refused under Trademark Act Section 2(d)."  [*See id.*].

45.     Notwithstanding the notice from the USPTO that Defendant's cobra design mark infringes on Plaintiffs' COBRA Mark, Defendant continues to market and sell products using the infringing mark:



*See* Cobra Labs, http://cobralabs.com/ (last visited May 1, 2017).

46.     Defendant has willfully placed the infringing "COBRA" mark on its products even though Defendant is fully aware that it does not have any ownership in or right to use the COBRA Marks.

<u>Defendant Adopts an Infringing Domain Name</u>

47.     Upon information and belief, Defendant registered the CobraLabs.com domain name on July 10, 2010 (the "Infringing Domain Name").  A true and correct copy of the Whois Record for CobraLabs.com is attached hereto as Exhibit "8" and is hereby incorporated by this reference.

<u>Trade Dress Infringement</u>

48.     Defendant's infringing products also use similar trade dress as products marketed and sold by Nutraceutical bearing the COBRA Marks, including by using confusingly similar colors and drawings of a cobra snake.  An example of the similar trade dress and infringing use of Nutraceutical's trademarks is included below:

 

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement – 15 U.S.C. § 1114)**

49.     Plaintiffs hereby incorporate by reference the allegations contained in the above paragraphs.

50.     Defendant does not have authorization to use the COBRA Marks.

51.     The COBRA Marks are distinctive and entitled to protection as a trademark pursuant to 15 U.S.C. § 1127.

52.     Plaintiffs own the COBRA Marks.

53.     Plaintiffs have obtained nationwide common law rights in the COBRA Design Mark by virtue of their use of the COBRA Design Mark in commerce.

54.     The COBRA Mark has been properly registered with the United States Patent and Trademark Office.

55.     Registration of the COBRA Mark constitutes prima facie evidence of the validity, ownership, and right to exclusive use of the COBRA Mark, and provides constructive notice of ownership.

56.     Defendant has used and continues to use the COBRA Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services, including with regard to goods that directly compete with goods offered by Plaintiffs.

57.     Defendant's continued use of the COBRA Marks is likely to cause confusion among consumers as to the source of the parties' respective goods and services.

58.     Defendant's unauthorized use of the COBRA Marks is in violation of the Lanham Act, 15 U.S.C. § 1114(1).

59.     Defendant's continued use of the COBRA Marks is willful and/or in bad faith because Defendant received both constructive and actual notice of Plaintiffs' ownership and registration of the COBRA Marks.

60.     As a direct and proximate result of Defendant's unauthorized use of the COBRA Marks, Plaintiffs have suffered irreparable injuries and damages in an amount to be proven at trial.

61.     Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are entitled to an injunction prohibiting Defendant from further using the COBRA Marks.

62.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover the profits Defendant has derived in connections with its unauthorized use of the COBRA Marks.

63.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover their damages incurred as a result of Defendant's unauthorized use of the COBRA Marks.

64.     Pursuant to 15 U.S.C. § 1117(b), Plaintiffs are entitled to recover treble damages from Defendant.

65.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover the attorney fees and costs incurred in pursuing this claim.

**SECOND CLAIM FOR RELIEF**
**(Unfair Competition under 15 U.S.C. § 1125)**

66.     Plaintiffs hereby incorporate by reference the allegations contained in the above paragraphs.

67.     This is a claim for unfair competition, arising from Defendant's unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68.     Defendant's conduct also constitutes an attempt to trade on the goodwill that Plaintiffs have developed in the COBRA Marks.

69.     Upon information and belief, Defendant is using a deliberate and intentional design to cause confusion and mistake to deceive purchases, which includes, without limitation, the use of the infringing COBRA Marks and similar trade dress as Nutraceutical's products.

70.     By its conduct, Defendant has caused Plaintiffs irreparable harm, damage, and injury, including to the value and goodwill of Plaintiffs' COBRA Marks, as well as to Plaintiffs' business, goodwill, and reputation.

71.     Upon information and belief, Defendant will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

72.     Plaintiffs have no adequate remedy at law.

73.     Such actions constitute unfair competition and are in violation of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Upon information and belief Defendant's conduct is part of a deliberate plan to trade on the valuable goodwill established therein and was done for the intentional purpose of misleading the public into believing that Defendant's products are in some way sponsored by, affiliated with or connected to the Nutraceutical's products advertised and sold under the COBRA Marks, all of which are contrary to fact and irreparably harmful to Nutraceutical's.

75.    Nutraceutical has been and will continue to be irreparably harmed by Defendant's conduct unless this Court enjoins Defendant from their unlawful conduct pursuant to 15 U.S.C. § 1116.

76.    As a result of Defendant's deliberate and willful conduct, Plaintiffs are entitled to damages, Defendant's profits, attorneys' fees and costs and any and all other relief authorized by 15 U. S. C. § 1117.

### THIRD CLAIM FOR RELIEF
### (Federal Cybersquatting under 15 U.S.C. § 1125(d))

77.    Plaintiffs hereby incorporate by reference the allegations contained in the above paragraphs.

78.    This is a claim for cybersquatting, arising from Defendant's registration, trafficking, and/or use of the Infringing Domain Name.

79.    Defendant is not authorized to use the COBRA Mark, or any confusingly similar mark, with any Internet domain name, or as a portion of any Internet domain name.

80.    The Infringing Domain Name is phonetically virtually identical to Plaintiffs' COBRA Mark and, as a whole, is confusingly similar to Plaintiffs' COBRA Mark.

81.    Defendant has a bad faith intent to profit, and has profited, from the COBRA Mark by the registration, trafficking, and/or use of the Infringing Domain Name.

82.    Defendant's registration, trafficking, and/or use of the Infringing Domain Name constitutes cybersquatting, in violation of 15 U.S.C. § 1125(d).

83.     By its conduct, Defendant has caused Plaintiffs irreparable harm, damage, and injury, including to the value and goodwill of Plaintiffs' COBRA Mark, as well as to Plaintiffs' business, goodwill, and reputation.

84.     Upon information and belief, Defendant will continue to commit the acts complained of in this Complaint unless restrained and enjoined by this Court.

85.     Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(Unfair Competition under Utah Code Ann. § 13-5a-101 *et seq.*)**

86.     Plaintiffs hereby incorporate by reference the allegations contained in the above paragraphs.

87.     The COBRA Mark is a registered trademark with the USPTO.

88.     Plaintiffs have obtained nationwide common law rights in the COBRA Design Mark by virtue of their use of the COBRA Design Mark in commerce.

89.     The COBRA Marks are owned by Plaintiffs.

90.     Defendant has used and continues to use the COBRA Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services.

91.     Defendant is not authorized to use the COBRA Marks.

92.     By reason of the foregoing, Defendant has engaged in unfair competition as defined by Utah Code Ann. section 13-5a-103.

93.     As a direct and proximate result of Defendant's unauthorized use of the COBRA Marks and unfair competition, Plaintiffs have suffered damages in an amount to be proven at trial.

94.    Defendant's actions constitute willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of Plaintiffs, which is therefore entitled to an award of punitive damages pursuant to Utah Code section 78B-8-201 and 13-5a-103.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against Defendant as follows:

1.    Grant permanent injunctive relief enjoining Defendant and each of its principals, directors, agents, servants, employees, successors, and assigns, and all those in privity, concert, or participation with them, from:

a.    imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the COBRA Marks, or any mark confusingly similar to the COBRA Marks, including but not limited to COBRA, COBRA LABS, or the cobra design;

b.    using any unauthorized copy or colorable imitation of the COBRA Marks, including but not limited to COBRA, COBRA LABS, or the cobra design, or using any false designation of origin or description, in such fashion as is likely to relate or connect Defendant with Plaintiffs or cause confusion;

c.    engaging in any other activity constituting unfair competition or infringement of the COBRA Marks or Plaintiffs' rights in, or to use, or to exploit the same; and

        d.      assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (a) – (c) above.

    2.      Find that Defendant is liable for the causes of action alleged against it in this Complaint.

    3.      Order Defendants to transfer to Plaintiffs, or its designee at its election, the Infringing Domain Name, and all other domain names that Defendant owns that are identical to, contain, or are confusingly similar to the COBRA Marks, pursuant to 15 U.S.C. § 1125(d)(1)(C).

    4.      Grant an order requiring Defendant and its principals, directors, agents, servants, employees, successors, and assigns, and all those in privity, concert, or participation with Defendant who receive actual notice of said order to deliver up, or at Plaintiffs' election, certify the destruction of all promotional, advertising, product, packaging, and any other materials of any kind bearing the COBRA Marks and any other mark confusingly similar to the COBRA Marks.

    5.      Award to Plaintiffs monetary damages in an amount to be fixed by the Court in its discretion as just including, but not limited to, all of the Defendant's profits or gains of any kind resulting from Defendant's willful infringement and/or acts of unfair competition, and any damages Plaintiffs suffered as a result of Defendant's actions, said damages to be trebled, and Plaintiffs' costs, exemplary damages, and reasonable attorney's fees in view of the intentional nature of the acts complained of in this Complaint and the exceptional nature of this case, pursuant to 15 U.S.C. § 1117(a)-(b),

and applicable common law, state statute and federal law, including Utah Code Ann. §§ 13-5-14, 13-11-19, and 13-11a-4.

6.      At Plaintiffs' election at any time prior to judgment in this matter, award to Plaintiffs' instead of actual damages for cybersquatting, statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000 per infringing domain name.

7.      Order Defendant to conduct corrective advertising sufficient to inform the consuming public that there is no connection between Plaintiffs and Defendant.

8.      Award Plaintiffs pre- and post-judgment interest on any monetary award made part of the judgment against Defendant.

9.      Order forfeiture or cancellation of the Domains or the transfer of the Domains to Plaintiffs.

10.     Grant to Plaintiffs such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all matters herein so triable.

DATED this 2nd day of May, 2017.

MAGLEBY CATAXINOS & GREENWOOD

Peggy A. Tomsic
Kennedy D. Nate
*Attorneys for Plaintiffs Nutraceutical
Corporation and NutraMarks, Inc.*